IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT ALLEN WILKINS,         )
                              )
        Petitioner,            )
                              )
v.                            )    Civil Action No. 3:17CV142–HEH
                              )
COMMONWEALTH OF VIRGINIA,     )
                              )
        Respondent.            )

## MEMORANDUM OPINION
(Adopting Report and Recommendation and Dismissing Action)

Robert Allen Wilkins, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1). On September 27, 2017, the Magistrate Judge issued a Report and Recommendation wherein he recommended denying Wilkins's § 2254 Petition. (ECF No. 18.) Wilkins has filed objections. (ECF No. 26.) For the reasons that follow, Wilkins's objections will be overruled, the Report and Recommendation will be accepted and adopted, and the action will be dismissed.

### I. THE REPORT AND RECOMMENDATION

The Magistrate Judge made the following findings and recommendation:

**A. Procedural History and Wilkins's Claims**

Wilkins was convicted in the Circuit Court of the City of Portsmouth, Virginia ("Circuit Court") of one count of petit larceny, third or subsequent offense. *Commonwealth v. Wilkins*, No. CR13–427, at 2 (Va. Cir. Ct. Nov. 1, 2013). On February 5, 2014, the Circuit Court entered final judgment and sentenced Wilkins to five years of incarceration. *Commonwealth v. Wilkins*, No. CR13–427, at 1 (Va. Cir. Ct. Feb. 5, 2014).

Wilkins appealed his conviction, arguing that the Circuit Court erred by not granting his motion to set aside the verdict, by allowing the jury trial

to proceed even though Wilkins was wearing his jail uniform, by finding that there was no ineffective assistance of counsel and that no conflict existed between Wilkins and trial counsel, and by not granting a continuance when one of Wilkins's subpoenaed witnesses did not appear. Petition for Appeal at 1, *Wilkins v. Commonwealth*, No. 0682-14-1 (Va. Ct. App. filed May 28, 2014). On July 29, 2014, the Court of Appeals of Virginia granted Wilkins's petition for appeal with respect to whether the Circuit Court erred by allowing the jury trial to proceed when Wilkins was wearing his jail uniform, and denied Wilkins's petition for appeal with respect to the remaining assignments of error. *Wilkins v. Commonwealth*, No. 0682-14-1, at 1-5 (Va. Ct. App. July 29, 2014). On May 12, 2015, the Court of Appeals of Virginia affirmed Wilkins's conviction, concluding "that the record on appeal does not support [Wilkins's] claim that the trial court committed reversible error . . . ." *Wilkins v. Commonwealth*, 771 S.E.2d 705, 710 (Va. Ct. App. 2015).

Wilkins then filed a petition for appeal raising the same four assignments of error in the Supreme Court of Virginia. Petition for Appeal 1-2, *Wilkins v. Commonwealth*, No. 151068 (Va. filed July 13, 2015). On December 17, 2015, the Supreme Court of Virginia granted Wilkins's petition for appeal with respect to whether the Circuit Court erred by allowing the jury trial to proceed when Wilkins was wearing his jail uniform. *Wilkins v. Commonwealth*, No. 151068, at 1 (Va. Dec. 17, 2015). On June 2, 2016, the Supreme Court of Virginia affirmed the judgment of the Court of Appeals of Virginia. *Wilkins v. Commonwealth*, 786 S.E.2d 156, 160 (Va. 2016).

On October 3, 2016, Wilkins filed a petition for a writ of habeas corpus in the Circuit Court. Petition for Writ of Habeas Corpus at 1, *Wilkins v. Commonwealth*, Law No. 16-3011 (Va. Cir. Ct. filed Oct. 3, 2016). In his petition, Wilkins raised the same four claims he raised on direct appeal. Brief in Support of Petition for Writ of Habeas Corpus at 3, *Wilkins v. Commonwealth*, Law No. 16-3011 (Va. Cir. Ct. filed Oct. 3, 2016). On December 8, 2016, the Circuit Court dismissed Wilkins's petition. *Wilkins v. Commonwealth*, Law No. 16-3011, at 2 (Va. Cir. Ct. Dec. 8, 2016). Specifically, the Circuit Court concluded that Wilkins's claims for relief were "substantially repetitious of petitioner's arguments on direct appeal and thus are not cognizable on habeas corpus." *Id.* at 1 (citing *Henry v. Warden*, 576 S.E.2d 495 (Va. 2003)). The Circuit Court also noted that claims regarding the sufficiency of the evidence are "not reviewable on state habeas corpus." *Id.* (citing *Pettus v. Peyton*, 153 S.E.2d 278 (Va. 1967)). To the extent that Wilkins alleged that the Commonwealth withheld exculpatory evidence, the Circuit Court dismissed his claim for failure to raise it on direct appeal. *Id.* (citing *Slayton v.*

2

*Parrigan*, 205 S.E.2d 680 (Va. 1974)).[1] Finally, the Circuit Court noted that to the extent Wilkins challenged counsel's performance, he had failed to state a claim for relief. *Id.* at 2. Wilkins did not appeal the dismissal of his state habeas petition.

On January 20, 2017, Wilkins filed his § 2254 Petition in this Court.[2] (§ 2254 Pet. 14.)[3] In his § 2254 Petition, Wilkins raises the following claims for relief:

| | |
|---|---|
| Claim One: | Trial counsel rendered ineffective assistance of counsel[4] by:<br>(a) failing to file a motion for discovery (*id.* at 5);<br>(b) making slanderous and derogatory comments about Wilkins's character (*id.*); |

---

[1] Wilkins listed identical claims in his direct appeal and in his state habeas petition. *See* Petition for Appeal 1–2, *Wilkins v. Commonwealth*, No. 151068 (Va. filed July 13, 2015); Brief in Support of Petition for Writ of Habeas Corpus at 3, *Wilkins v. Commonwealth*, Law No. 16–3011, at 2 (Va. Cir. Ct. filed Oct. 3, 2016). In a small subpart of Claim One (a) in his state habeas, Wilkins appeared to add an argument that the Commonwealth failed to "produc[e] tapes" from the store video surveillance. Brief in Support of Petition for Writ of Habeas Corpus at 5, *Wilkins v. Commonwealth*, Law No. 16–3011, at 2 (Va. Cir. Ct. filed Oct. 3, 2016). The Commonwealth argued that, "[i]nsofar as the present claim raises any issue not raised on direct appeal, petitioner has procedurally defaulted the claim." Motion to Dismiss at 2, *Wilkins v. Commonwealth*, Law No. 16–3011, at 2 (Va. Cir. Ct. filed Nov. 18, 2016). The Circuit Court, based on arguments made by the Commonwealth, indicated that, "[i]nsofar, as petitioner alleges that the Commonwealth withheld exculpatory evidence, the Court dismisses this portion of allegation (a) . . . for failure to raise it on direct appeal." *Wilkins v. Commonwealth*, Law No. 16–3011, at 2 (Va. Cir. Ct. Dec. 8, 2016) (citation omitted). Thus, it does not appear that the Circuit Court truly believed Wilkins had sufficiently raised such a claim, but out of abundance of caution, dismissed any new claim lurking therein as procedurally defaulted.

[2] This is the date that Wilkins states that he executed his § 2254 Petition. Wilkins did not indicate when he placed his § 2254 Petition in the prison mailing system for mailing to this Court. Because Respondent does not argue that Wilkins's § 2254 Petition is untimely, the Court uses the date that Wilkins executed his § 2254 Petition as the filed date.

[3] The Court employs the pagination assigned to Wilkins's submissions by the CM/ECF docketing system.

[4] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

                    (c) failing to specifically state that Wilkins's attire was labeled "jail clothing" (*id.*);

                    (d) failing to prepare for sentencing (*id.*);

                    (e) failing to move to strike evidence and testimony (*id.*); and,

                    (f) failing to subpoena witnesses for Wilkins's defense (*id.*).

Claim Two:        The Circuit Court erred by allowing Wilkins's trial to proceed even though Wilkins was wearing jail clothing. (*Id.* at 6.)

Respondent has moved to dismiss on the grounds that Claim One's subparts are procedurally defaulted and that all of Wilkins's claims lack merit. (Mem. Supp. Mot. Dismiss 2–17, ECF No. 14.) Wilkins did not raise his current claims of ineffective assistance of counsel in his state habeas petition before the Circuit Court. Nevertheless, Respondent acknowledges that, pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the fact that Wilkins had no counsel at his "initial-review collateral proceeding" may establish cause for the procedural default of these claims. *Martinez*, 566 U.S. at 16. For the following reasons, it is RECOMMENDED that Wilkins's claims be DISMISSED as lacking in merit.

## B.   Trial Court Error

### 1.   Applicable Constraints Upon Habeas Review

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### 2. Analysis

In Claim Two, Wilkins contends that the Circuit Court erred by allowing Wilkins's jury trial to proceed even though Wilkins was wearing jail clothing. (§ 2254 Pet. 6.) In rejecting this claim, the Supreme Court of Virginia stated as follows:

> In *Estelle v. Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976), the Supreme Court of the United States held that states "cannot, consistent[] with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Id.* at 512, 96 S. Ct. at 1697. Applying *Estelle*, we have said that "being compelled to appear before a jury in clearly identifiable jail or prison clothes may undermine the fairness of the fact-finding process and, thus, violate the accused's fundamental right to a presumption of innocence while furthering no essential state interest." *Jackson v. Washington*, 270 Va. 269, 276, 619 S.E.2d 92, 95 (2005). "Because the particular evil proscribed is compulsion, a defendant must properly object to being compelled to appear before the jury in prison clothes." *Id.* (internal quotation marks and citations omitted). However, if a defendant wears jail attire before the jury because of a knowingly made tactical decision or because the defendant is otherwise "frustrat[ing] the process of justice by his own acts," then there is no state compulsion and no deprivation of rights. *Id.* at 505 n.2, 507–08, 96 S. Ct. at 1693 n.2, 1694–95.
>
> This case presents a very narrow question for resolution: whether Wilkins' attire was "readily identifiable" as jail-issued clothing. To answer that question, we first must determine which party has the burden of proof. In other words, does Wilkins have to prove that the clothing he wore at trial was readily identifiable as jail attire? Or, does the Commonwealth have to prove that it was not?

5

We hold that the defendant bears the burden of proving that the clothing he or she wore at trial was readily identifiable to the jury as jail attire. We find support for this in the language of *Estelle* itself: even the narrow language of the holding emphasizes that the constitutional violation occurs only when the defendant is "dressed in *identifiable* prison clothes." *Id.* at 512, 96 S. Ct. at 1697 (emphasis added). This approach also finds support in how *Estelle* has been applied in the federal courts and in our sister states. *See, e.g., United States v. Henry*, 47 F.3d 17, 22 (2d Cir. 1995) (deferring to the lower court's finding "that a jury would not readily identify [the defendant's jail-issued] denim as prison issue"); *United States v. Martin*, 964 F.2d 714, 720 (7th Cir. 1992) (ruling for the government because "the defendant is unable to demonstrate that the plain/unmarked jumpsuit that he wore during the two days of trial was clearly identifiable as prison clothing"); *United States v. Rogers*, 769 F.2d 1418, 1422 (9th Cir. 1985) ("A person seeking reversal of his conviction because he was compelled to stand trial in prison garments must demonstrate from the trial record that a juror would recognize the clothing as having been issued by prison authorities."); *Shackelford v. State*, 498 N.E.2d 382, 384 (Ind. 1986) ("[T]he defendant must show he was compelled to wear jail attire *and that it was readily identifiable as such*." (citing *Estelle*, 425 U.S. at 512, 96 S. Ct. at 1697 (emphasis in original)).

A defendant must meet this burden with evidence of his or her appearance in court. A record that shows the defendant wore clothes marked with the word "jail" or "prison" would go far in helping the defendant meet his or her burden. *See, e.g., Estelle*, 425 U.S. at 502, 96 S. Ct. at 1692 (the defendant's clothes "were distinctly marked as prison issue"). Clothing marked with serial numbers or other indicia of incarceration would also weigh in favor of a defendant satisfying his or her burden. *See Randle v. State*, 826 S.W.2d 943, 946 (Tex. Crim. App. 1992) (ruling that an *Estelle* violation occurs when a defendant, against his will, is "placed before the jury while wearing clothing which bears the indicia of incarceration"); *see also Scott v. State*, 80 S.W.3d 306, 306–08 (Tex. Crim. App. 2002) (reciting the defense counsel's detailed description of the defendant's clothing at trial as "orange overalls marked 'P–5, P–6, No. 27, No. 25,'" and citing *Randle*). Even unmarked clothing could be readily

> identifiable as jail-issued clothing, such as the orange jumpsuits or striped outfits widely associated with prison attire. *See Smith v. United States*, 182 F.3d 1023, 1025 (8th Cir. 1999) (determining that it was "virtually certain that jury members would identify the orange outfit worn by [the defendant] as prison garb," despite the clothing not being marked with "numbers, letters, or other markings").
>
> In this case, the evidence in the record is inadequate for Wilkins to meet his burden of proving that the clothing he wore at trial was readily identifiable as jail attire. The entirety of the description in the record is as follows:
>
>> He's wearing Portsmouth City Jail clothes. They are kind of like a green, sort of scrub outfit. He is wearing black sneakers that I think they have the inmates wear. He's got a visible bracelet on his left arm.
>
> There is no indication that Wilkins' outfit was marked in any manner that would indicate it was from the Portsmouth City Jail, or any other detention facility. Neither the "sneakers" nor the "visible bracelet" as described in this record are clear indicia of incarceration. There are no photographs in the record of either Wilkins' attire specifically or the uniform given to Portsmouth City Jail inmates generally. Because we determine that Wilkins has failed to meet his burden of proving that his clothing at trial was readily identifiable as jail-issued clothing, we do not need to reach the question whether Wilkins was compelled to wear said clothing. Likewise, we do not need to address whether Wilkins' failure to obtain non-jail clothing was a result of his own actions in bad faith.

*Wilkins v. Commonwealth*, 786 S.E.2d 156, 159–60 (Va. 2016). The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of this claim given the facts before that court. *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (noting that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition must overcome the limitation of § 2254(d)(1) on the record that was before that state court"); 28 U.S.C. § 2254(d)(1)–(2).

In support of his claim, Wilkins contends that he should not have been compelled to appear before the jury wearing jail attire because his "uniform was labeled with Portsmouth City Jail." (ECF No. 1-1, at 6.) Wilkins did not raise this allegation before the Supreme Court of Virginia,

and, as explained below, this Court may not consider it in the first instance in reviewing Claim Two.

The Supreme Court has held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 563 U.S. at 185; *see Williams v. Stanley*, 581 F. App'x 295, 296 (4th Cir. 2014). Thus, "evidence later introduced in federal court has no bearing on § 2254(d)(1) review." *Pinholster*, 563 U.S. at 185.[5] Here, the Supreme Court of Virginia concluded that Wilkins had not met his burden of proving that his clothing at trial was "readily identifiable" as jail clothing. Thus, that court adjudicated Wilkins's *Estelle* claim on the merits. Accordingly, this Court may not consider any new factual allegations that Wilkins has stated for the first time in his § 2254 Petition with respect to Claim Two. *See id.*; *Williams*, 581 F. App'x at 296–97. Therefore, on the record before it, the Supreme Court of Virginia reasonably concluded that Wilkins had not met his burden of demonstrating an *Estelle* violation.[6]

Moreover, to the extent that any error under *Estelle v. Williams* exists in the record, such an error is subject to harmless error analysis. *See United States v. Hinojosa-Ramos*, No. 89–5540, 1990 WL 27349, at *1 (4th Cir. Feb. 26, 1990) (citing *United States v. Harris*, 703 F.2d 508 (11th Cir. 1983); *Mitchell v. Engle*, 634 F.2d 353 (6th Cir. 1980); *Boswell v. Alabama*, 537 F.2d 100 (5th Cir. 1976)); *see also Whitman v. Bartow*, 434 F.3d 968, 971–72 (7th Cir. 2006); *United States v. Hurtado*, 47 F.3d 577,

---

[5] Similarly, "under § 2254(d)(2), the court may only grant habeas relief when the state court's factual determination was unreasonable 'in light of the evidence presented in the State court proceeding.'" *Williams*, 581 F. App'x at 296–97; *see Watkins v. Rubenstein*, 802 F.3d 637, 649 (4th Cir. 2015) (citation omitted) (Traxler, C.J., concurring) (explaining that "[b]y its plain terms, § 2254(d)(2) limits our review to the *evidence* placed before the state [habeas] court").

[6] The Court recognizes that, in at least one instance, the United States Court of Appeals for the Fourth Circuit has found an exception to the Supreme Court's dictate in *Pinholster* when "a state court forecloses further development of the factual record." *Winston v. Kelly*, 592 F.3d 535, 555 (4th Cir. 2010). The Fourth Circuit explained that "[i]f the record ultimately proves to be incomplete, deference to the state court's judgment would be inappropriate because judgment on a materially incomplete record is not an adjudication on the merits for the purposes of § 2254(d)." *Id.* at 555–56 (citation omitted). However, the Fourth Circuit explained that such a conclusion was appropriate in the case before it because the petitioner's "inability to produce potentially dispositive evidence in state habeas proceedings came about through no fault of his own." *Winston v. Pearson*, 683 F.3d 489, 501 (4th Cir. 2012). That is not the case here.

581–82 (2d Cir. 1995). As discussed below in connection with Claim One (c), "the record is replete with overwhelming evidence of [Wilkins's] guilt." *Whitman*, 434 F.3d at 971. Thus, even assuming *arguendo* that Wilkins's due process rights under *Estelle v. Williams* were violated, such error was harmless. Accordingly, it is RECOMMENDED that Claim Two be DISMISSED for lack of merit.

C. Ineffective Assistance of Counsel[7]

1. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

2. Analysis

As noted above, Wilkins raises several claims of ineffective assistance of counsel in the subparts of Claim One. The Court first addresses Claim One (c) because of its relation to Claim Two.

In Claim One (c), Wilkins contends that counsel was ineffective for failing to specifically state to the Circuit Court that Wilkins's attire was labeled "jail clothing." (§ 2254 Pet. 5.) Wilkins avers that his "jail uniform was labeled 'Portsmouth City Jail.'" (ECF No. 1-1, at 7.) On the day of Wilkins's trial, counsel raised an objection to Wilkins wearing jail clothes in front of the jury. Before the jury was brought into the courtroom, Wilkins's counsel raised the following objection:

> MR. ROSENBERG: Judge, also I would have an objection to Mr. Wilkins being brought before the jury. He's

---

[7] As noted above, Wilkins's claims of ineffective assistance of counsel are not subject to review under the standard set forth in 28 U.S.C. § 2254(d) because Wilkins did not raise these claims in his state habeas petition.

wearing Portsmouth City Jail uniform clothes. They are kind of like a green, sort of scrub outfit. He is wearing black sneakers that I think they have the inmates wear. He's got a visible bracelet on his left arm.

Mr. Wilkins' lady friend and I spoke a number of times. She indicated she brought him clothing. First she brought it too soon. The jail wouldn't accept it. Then she brought him clothes this morning. They wouldn't accept them. It had something to do with the hems taped up or something like this. After Mr. Wilkins says what he has to say, I may ask to be tried by the Court. I set the matter with a jury. It was easier to take off and put it on. I have to object to him being brought in front of the jury with jail clothes on. I'm not in a position to furnish clothing to all inmates, and Mr. Wilkins and I are not even remotely close with height, weight, nor any of my sons, so I'm not in a position to do it, Judge.

. . . .

MR. ROSENBERG: Judge, note a continuing objection on behalf of the defendant being dressed in jail clothes.

THE COURT: I understand that the normal practice is to, you know, not have people in jail clothes. I don't know whether the jury is sophisticated enough to know what jail clothes look like or not. The difficulty that we always have is that I've been doing this for almost 50 years, and I can see somebody in jail clothes and I can generally tell you what jail they are from, because they tend to vary. It's the defendant's responsibility to, you know, provide his own clothes within the parameters of the sheriff's department. And if he doesn't do it, then I guess we have to try him in jail clothes.

MR. ROSENBERG: I understand that. I was not expecting this issue to arise. There is a case from the Virginia Supreme Court. I would have brought it with me, where habeas was granted where an attorney consented to allowing - -

THE COURT: I'm not expecting you to consent. I'm making a ruling. I understand your objection, and that is overruled. And I'm going to decide this. That's what I get paid to do on occasion. So that's the way we're going to do it.

(Oct. 30, 2013 Tr. 5–6, 13–14.)

10

As discussed above in conjunction with Claim Two, the Supreme Court has held that states "cannot, consistent[] with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Estelle*, 425 U.S. at 512. To demonstrate a violation of the Fourteenth Amendment under *Estelle*, a defendant must prove that the clothing he or she wore at trial was readily identifiable to the jury as jail attire. *See, e.g., United States v. Henry*, 47 F.3d 17, 22 (2d Cir. 1995); *United States v. Martin*, 964 F.2d 714, 720 (7th Cir. 1992); *United States v. Rogers*, 769 F.2d 1418, 1422 (9th Cir. 1985). Here, if Wilkins's jail clothes had actually been labeled with the words "Portsmouth City Jail," counsel may have been deficient for not specifically raising this, as it may have helped Wilkins meet his burden of demonstrating an *Estelle* violation. As discussed below, however, Wilkins's claim is readily dismissed for lack of prejudice given the overwhelming evidence of Wilkins's guilt. *See Strickland*, 466 U.S. at 694 (noting that it is not necessary to determine whether counsel performed deficiently if a claim is readily dismissed for lack of prejudice).

During Wilkins's trial, the Commonwealth presented testimony from Rodney Vinson, an asset protection officer for Wal-Mart. (Oct. 30, 2013 Tr. 18.) Mr. Vinson was working at the Wal-Mart on Frederick Boulevard in Portsmouth, Virginia, on February 7, 2013. (Oct. 30, 2013 Tr. 18.) While he walked the floor, Mr. Vinson observed Wilkins wearing a "blue bubble coat" in the health and beauty aids section of the store. (Oct. 30, 2013 Tr. 19.) Mr. Vinson watched Wilkins take two bottles of Dove deodorant off the shelf and "[c]onceal them inside his coat, inside his person." (Oct. 30, 2013 Tr. 20–21.) Wilkins then "went back to the garden center" and exited the store from there. (Oct. 30, 2013. Tr. 21.) Wilkins never stopped to pay for any items before he exited the store. (Oct. 30, 2013 Tr. 22.)

Mr. Vinson "approached Mr. Wilkins" outside and identified himself. (Oct. 30, 2013 Tr. 21–22.) He informed Wilkins why he was approaching, and Wilkins said, "Just let me go. I won't do it again." (Oct. 30, 2013 Tr. 22.) Mr. Vinson escorted Wilkins to the asset protection office and "asked [Wilkins] to give [him] all the merchandise that he didn't pay for." (Oct. 30, 2013 Tr. 23.) Ultimately, Wilkins removed six wave caps, Dove soap, Colgate, and other items, including the deodorant, from his coat. (Oct. 30, 2013 Tr. 27–29.) Wilkins did not provide a receipt for any of the items. (Oct. 30, 2013 Tr. 29.) Mr. Vinson determined that all of the items belonged to Wal-Mart. (Oct. 30, 2013 Tr. 29–30.) The total value of the items recovered from Wilkins was $59.25. (Oct. 30, 2013 Tr. 31.)

The Commonwealth also presented testimony from Officer Byers of the Portsmouth Police Department. (Oct. 30, 2013 Tr. 39.) Office Byers

responded to the Wal-Mart on Frederick Boulevard on February 7, 2013 in reference to a shoplifting. (Oct. 30, 2013 Tr. 39–40.) When he arrived on scene, he made contact with Wilkins and obtained Wilkins's name, date of birth, and social security number. (Oct. 30, 2013 Tr. 40.) Through Officer Byers, the Commonwealth offered into evidence photocopies of certified conviction orders indicating that Wilkins had been previously convicted of five larcenies or larceny-related offenses. (Oct. 30, 2013 Tr. 41.)

Given the strength of the evidence of Wilkins's guilt, Wilkins cannot demonstrate that any prejudice resulted from counsel's failure to specifically state that Wilkins's attire was labeled with "Portsmouth City Jail." *See Lee v. Cain*, 397 F. App'x 102, 103 (5th Cir. 2010) (affirming denial of habeas relief where counsel allowed defendant to appear for trial in prison attire in light of evidence of guilt); *Carter v. United States*, 288 F. App'x 648, 650 (11th Cir. 2008) ("[The petitioner has] fail[ed] to demonstrate that he was prejudiced by counsel's performance. The evidence against [the petitioner] on both counts was so strong that there is not a reasonable probability that a jury would have found him not guilty but for the fact that he appeared at trial in prison attire."); *Whitman*, 434 F.3d at 972 (rejecting petitioner's ineffective assistance claim for failure to show prejudice because "[t]he evidence of [petitioner's] guilt was overwhelming, and his attire was not an outcome determinative factor in the jury's decision"); *Givens v. Del Papa*, 177 F. App'x 771, 773 (9th Cir. 2006) ("Even if counsel's failure to object to [the petitioner's] appearance in jail clothes on the first day of trial . . . fell below the objective standard of reasonableness, it is extremely unlikely that the outcome of the trial would have been different had [the petitioner] been appropriately dressed."); *Hill v. Mitchell*, 400 F.3d 308, 320–21 (6th Cir. 2005) (concluding that petitioner was not entitled to relief on ineffective assistance of counsel claim even though he appeared at trial in jail attire because there was strong evidence of his guilt and the petitioner failed to show prejudice). Accordingly, it is RECOMMENDED that Claim One (c) be DISMISSED for lack of merit.

In Claim One (a), Wilkins contends that counsel was ineffective for failing to file a motion for discovery. (§ 2254 Pet. 5.) According to Wilkins, counsel "made no attempt to file any motions for discovery or request to obtain a copy of the video tape evidence which was exculpatory evidence that was favorable to [Wilkins]." (ECF No. 1–2, at 10.) In Claim One (d), Wilkins alleges that counsel was ineffective for failing to prepare for sentencing. (§ 2254 Pet. 5.) In Claim One (e), Wilkins argues that counsel failed to move to strike evidence and testimony presented during his jury trial. (*Id.*) According to Wilkins, counsel should have moved to strike testimony presented by Rodney Vinson, the member of the asset protection team at Wal-Mart who witnessed Wilkins committing petty

larceny. (ECF No. 1-2, at 6.) In Claim One (f), Wilkins contends that counsel was ineffective by failing to subpoena witnesses for Wilkins's defense. (§ 2254 Pet. 5.)

Wilkins fails to state the basis for his belief that counsel should have filed a motion for discovery, except for a motion to discover the video tapes. Wilkins also fails to identify how these video tapes would have been favorable to his defense and on what basis counsel should have moved to strike Mr. Vinson's testimony. Wilkins also fails to indicate what counsel should have presented on Wilkins's behalf at sentencing, and who counsel should have subpoenaed to testify on Wilkins's behalf. Wilkins's terse and conclusory allegations insufficiently demonstrate deficient performance or prejudice under *Strickland*. *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir 1990) (requiring proffer of mitigating evidence to state claim of ineffective assistance); *see Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"). Accordingly, it is RECOMMENDED that Claims One (a), (d), (e), and (f) be DISMISSED for lack of merit.

In Claim One (b), Wilkins faults counsel for making slanderous and derogatory comments about Wilkins's character. (§ 2254 Pet. 5.) Wilkins references the following dialogue that occurred during a recess:

> THE DEFENDANT: You all forced me to have the trial and he sat there and talked shit to me. This is ridiculous. I want out of this courtroom.
>
> THE COURT: You will get an opportunity in just about 30 seconds.
>
> THE WITNESS: I'm done with it, man. Take me out. I'm just leaving.
>
> MR. ROSENBERG: Your Honor, I want to put something on the record with the bailiffs here.
>
> THE DEFENDANT: I'm going to kill you, man.
>
> MR. ROSENBERG: That too, Judge.
>
> (The defendant left the courtroom.)
>
> MR. ROSENBERG: Apparently Mr. Wilkins is under some sort of misunderstanding I've got to take whatever he's got to give me. And obviously that's wrong. After sustained abuse, I indicated to him - - and I apologize for using this kind of language - - but this is how we communicate. I told him to blow me. I told him, You don't have a 26-year-old lawyer to mess with. And you shouldn't mess around with the big boys. He continued to verbally abuse me and threatened to get me. I indicated to him that he was a thief, and a bad thief. He threatened to kill me again. I told him,

13

> Don't steal my shit. He said, I'm going to fix you. He said I was killing his children. And I made a comment about his suitability as a father.
>
> In the midst of all the deputies, he indicated to me, Be careful. It is dangerous out there, very dangerous out there. You heard him just say, I will kill you. I see no reason not to proceed with this case. I've got a decent defense, in spite of this blooming idiot. I want to conclude the case. As to whether or not - - I don't want my business on the street necessarily, Judge.
>
> THE COURT: Well, I think it would be fair to say Mr. Wilkins is a difficult client.
>
> MR. ROSENBERG: If he's as good a killer as he is at stealing, I don't have much to worry about, but you never know.

(Oct. 30, 2013 Tr. 52–54.) Wilkins fails to explain, and the Court fails to discern, how counsel's comments prejudiced his defense when they occurred outside of the presence of the jury, as the jury, not the judge, was responsible for deciding Wilkins's guilt or innocence. *See United States v. Chong Lam*, 677 F.3d 190, 197 (4th Cir. 2012) (noting that when determining whether a prosecutor's improper remarks were prejudicial, a court must consider, *inter alia*, whether the remarks misled the jury and whether they were deliberately made to mislead the jury); *Lawlor v. Zook*, No. 2:15CV113, 2017 WL 2603521, at *26 n.39 (E.D. Va. June 15, 2017) (rejecting claim that "trial court committed error by referencing [petitioner's] failure to testify . . . because the disputed comments were made outside the presence of the jury"). Accordingly, it is RECOMMENDED that Claim One (b) be DISMISSED for failure to demonstrate prejudice.

### D. Conclusion

For the foregoing reasons, it is RECOMMENDED that Respondent's Motion to Dismiss (ECF No. 12) be GRANTED and Wilkins's claims be DISMISSED. It is further RECOMMENDED that Wilkins's § 2254 Petition be DENIED and the action be DISMISSED.

(Report and Recommendation 1–18 (alterations in original).)

## II. STANDARD OF REVIEW FOR REPORT AND RECOMMENDATION

"The magistrate makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains

with this court." *Estrada v. Witkowski*, 816 F. Supp. 408, 410 (D.S.C. 1993) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "[W]hen a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations," *de novo* review is unnecessary. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted).

### III. WILKINS'S OBJECTIONS

The Court received two submissions from Wilkins. The first is a letter "address[ing] the denied motion to grant evidence hearing on the defendant wearing jail clothes at trial."[8] (Letter 1, ECF No. 25 (referring to the Magistrate Judge's order denying an evidentiary hearing, ECF No. 23).) The Court discerns no error in the Magistrate Judge's denial of Wilkins's request for a hearing, and Wilkins fails to offer any persuasive argument that an evidentiary hearing is needed. To the extent that Wilkins seeks reconsideration of the denial of the request for an evidentiary hearing, his request for reconsideration (ECF No. 25) will be denied.

---

[8] After the Report and Recommendation was entered, Wilkins filed a letter motion asking the Court to order an evidentiary hearing. (ECF No. 20.) By Memorandum Order entered on October 12, 2017, the Court denied the letter motion and explained, "[a]t this juncture, no evidentiary hearing is required." (ECF No. 23, at 1.)

15

The second submission from Wilkins is unlabeled; however, the Court construes this submission as Wilkins's objections to the Report and Recommendation. ("Objections," ECF No. 26.) Wilkins's Objections are rambling, lack any discernable organization, and fail to comport with the Magistrate Judge's directive that "objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings." (R & R 18, ECF No. 18 (citation omitted).) Instead of identifying specific deficiencies in the Report and Recommendation, Wilkins generally reasserts the factual and legal arguments that he made in his § 2254 Petition. Wilkins also cites solely to the state court record, and not to the Report and Recommendation.

In order for an objection to trigger *de novo* review, it must be made with "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007); *see Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir 2003) ("[P]etitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court as to this claim."). Further, the objection must respond to a specific error in the Report and Recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). "General objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object." *United States v. Wearing*, No. 3:04–cr–00092, 2011 WL 918343, at *2 (W.D. Va. Mar. 15, 2011) (citing *Orpiano*, 687 F.2d at 47; *Veney v. Astrue*, 539 F. Supp.

2d 841, 845–46 (W.D. Va. 2008)). After reviewing Wilkins's Objections, the Court concludes that Wilkins's Objections are tantamount to failing to object at all.

For example, Wilkins begins with the statements:

> An written objection to the Report and Recommendation to why this claim and claims should be granted.
> The defendant should not have been compelled to appear before a jury wearing identifiable jail uniform (T–5, 13–15).
> The trial court erred by finding there was no ineffective assistance of counsel.
> Why this petition should be granted 2254 claims in District Court because there is merit to support claims, one and two based on Court Transcript of the trial process that the defendant rights were violated under Sixth and Fourteenth Amendment to a fair trial.

(Objs. 1.) The next page is a portion of this Court's docket, followed by what appears to be a description of what he filed in his state habeas petition. (*Id.* at 2–3.) The remaining eleven pages are comprised of a summary of portions of the trial transcript and rambling legal arguments in support of some or all of his claims in no discernable order. (*Id.* at 4–14.) Wilkins fails to identify "a specific error in the magistrate's proposed findings and recommendations," and therefore his Objections fail to comport with Federal Rule of Civil Procedure Rule 72. *Orpiano*, 687 F.2d at 47. Accordingly, this Court is not required to conduct a *de novo* review of the record.

Even in light of the fact that the Court is not required to conduct a *de novo* review, after reviewing the record, the Court finds that the Magistrate Judge properly assessed Wilkins's claims and determined that they lacked merit. Accordingly, the Report and Recommendation will be accepted and adopted.

## IV. CONCLUSION

Wilkins's Objections will be overruled. The Report and Recommendation (ECF No. 18) will be accepted and adopted. The Motion to Dismiss (ECF No. 12) will be granted. Wilkins's § 2254 Petition (ECF No. 1) will be denied. Wilkins's request for reconsideration of the denial of his request for an evidentiary hearing (ECF No. 25) will be denied. Wilkins's claims and the action will be dismissed. A certificate of appealability will be denied.[9]

An appropriate Final Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Nov. 28, 2017
Richmond, Virginia

---

[9] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(a). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Wilkins fails to meet this standard. Accordingly, the Court will deny a certificate of appealability.